IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00186-WDM-PAC

DEBRA OVERTON,

    Plaintiff,

v.

THE BOARD OF COMMISSIONERS OF RIO BLANCO COUNTY, et al.,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This case is before me on defendant Robert Omer's ("Omer") motion for summary judgment, filed February 1, 2006, and a motion for summary judgment filed the same day by defendants Pioneers Hospital of Rio Blanco County and the Board of Trustees of the Hospital (collectively "the Hospital"). For the reasons that follow, the first motion will be granted in part, and the second will be denied.

### Background[1]

On July 5, 2004, after working at the Hospital as either a laboratory technician or supervisor for over twenty years, Plaintiff Debra Overton ("Overton") was fired by the Hospital's CEO, Defendant Omer. According to Defendants, Overton was fired because of a long history of rude, abrasive, and unprofessional behavior. According to

---

[1] Unless otherwise noted, the background facts, drawn from the parties' briefs and supporting evidence, appear to be undisputed.

Overton, she actually has a long history of excellent performance evaluations, and was fired because she voiced her opinion that the Hospital was engaging in illegal Medicare and Medicaid billing practices.

The billing practices dispute arose in 2004, when the Hospital began operating the Meeker Family Clinic ("the Clinic") and billing for lab work done in the Clinic's own laboratory. According to Overton, the Clinic was not complying with applicable federal certification regulations, and therefore the Hospital could not legally bill Medicare and Medicaid for work performed at the Clinic's lab.

Overton raised her concerns on multiple occasions. At various times, she complained to Omer, the Hospital's CEO, Steve Schwartz ("Schwartz"), the CFO, and Aaron Long, the Medical Director. When their responses did not satisfy her, Overton raised her concerns with an employee of Quorum Healthcare, an independent consulting business that frequently worked with the Hospital. Finally, on June 17, 2004, while a state inspector was visiting the Hospital's lab, Overton told the inspector of her concerns. These last complaints particularly upset Schwartz, who later told Omer that Overton's behavior was intolerable and that she should not be an employee of the Hospital.

Following her dismissal on July 5, 2004, Overton initiated this action, bringing two claims. In her first claim, pursuant to 42 U.S.C. § 1983, Overton asserts that Defendants unconstitutionally infringed upon her right to free speech when they fired her for voicing her concerns. In her second claim, pursuant to the *qui tam* provisions of the False Claims Act (FCA) 31 U.S.C. § 3730(d)-(h), Overton claims that she was

retaliated against because of actions she took in furtherance of a FCA action.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

1.   Free Speech Violation

Defendants first argue for summary judgment because Overton has not produced any evidence of a First Amendment violation. Specifically, they argue that Overton admitted in her deposition that it was just part of her job to make the comments she now claims were protected by the First Amendment. *See Garcetti v. Ceballos*, 126 S.Ct. 1951, 1960 (2006) (holding that when public employees speak "pursuant to their official duties," the First Amendment "does not insulate their communications from

employer discipline"). In response, Overton denies that her comments were part of her official duties, denies admitting they were, and claims that her deposition testimony was taken out of context.

I Have reviewed the transcript of Overton's deposition, and have considered the entire context surrounding her alleged admissions. Of particular importance is the evidence regarding the comments to the state inspector, because Overton claims that these comments led most directly to her termination. I conclude that a reasonable jury, considering the evidence as a whole, could find that these comments were not made as part of her official duties, but that when Overton raised her concerns, she was speaking as a citizen on a matter of public concern. *See Garcetti*, 126 S.Ct. at 1961-62 (acknowledging that determining the exact scope of a public employee's official duties will normally require a practical, fact-specific inquiry). Therefore, summary judgment is not appropriate on the basis of Defendants' "official duties" argument.

    a.    <u>Defendants' Affirmative Defense</u>

Even if they would otherwise be liable for improperly violating Overton's First Amendment rights, Defendants can avoid liability if they can prove, by a preponderance of the evidence, that they would have fired Overton regardless of her speech. *Baca v. Sklar*, 398 F.3d 1210, 1222 (10th Cir. 2005). According to Defendants, this is the situation in this case, and they are accordingly entitled to summary judgment.

However, as movants who bear the burden of persuasion on this issue at trial, Defendants are entitled to summary judgment only if they can produce evidence that is so powerful that no reasonable factfinder could disbelieve it. *Herndon v. Mass.*

*General Life Ins.*, 28 F. Supp. 2d 379, 382 (W.D. Va. 1998); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.13[1] (3d ed. 2004).  While Defendants' evidence is certainly sufficient to allow a jury to find that Overton would have been fired in the absence of her protected speech, it is not so overwhelming that no reasonable jury could find otherwise.  Therefore, summary judgment based upon Defendants' affirmative defense is not appropriate.

      b.     <u>Qualified Immunity for Defendant Omer</u>

"In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law."  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).  When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to "first establish that the defendant's actions violated a constitutional or statutory right." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  Thus, in the context of a motion for summary judgment, I must first consider the threshold question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?"  *Holland*, 268 F.3d at 1185.  If so, then I must "ask whether the right was clearly established at the time of defendant's unlawful conduct."  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Id.* (internal quotation omitted).  If Overton successfully establishes the violation of a clearly established right, the burden shifts to

5

Defendants, who must prove that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. *Medina*, 252 F.3d at 1128; Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002).

As discussed above, when taken in the light most favorable to Overton, the evidence in this case indicates that Omer improperly infringed upon Overton's First Amendment rights by firing her in retaliation for her comments to the state inspector. Therefore, the critical inquiry regarding Omer's qualified immunity defense is whether the law as clearly established at the time Omer acted. Or in other words, would a reasonable official, taking into consideration all of the specific facts of his situation, have known that Overton's speech could not be the basis of her dismissal?

I conclude that the law was clearly established. At the time of Omer's actions, *Patrick v. Miller*, 953 F.2d 1240 (10th Cir. 1992), represented the law in this circuit. In *Patrick*, a former city employee alleged that he was fired because of comments he made in private meetings with the city attorney, and at public meetings as part of his official duties. *Id.* at 1242. The district court granted summary judgment in favor of two city officials based upon qualified immunity grounds, but the Tenth Circuit Court of Appeals reversed. *Id.* The Tenth Circuit found that the law was clearly established that a plaintiff could not be fired because of such comments. *Id.* at 1247-48. In *Patrick*, the plaintiff was a city finance director and made public statements of concern about the use of retirement funds to balance the city budget. These facts are analogous to Overton, a laboratory supervisor, complaining about laboratory billing practices. Therefore, Omer is not entitled to summary judgment based upon qualified immunity in

this case.

    c.    <u>Municipal Liability</u>

Local governments cannot be held liable under § 1983 for the unconstitutional actions of their employees under a theory of *respondeat superior*. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000). Rather, local governments are liable only if the employee's actions were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." *Id.*

In this case, there is no question regarding official policy or custom, but Overton argues that Omer is an official with final policy making authority. In support, she points to Omer's deposition testimony, where he testified that he had complete, final, and unreviewed authority to make hospital policy regarding the discipline and termination of employees.[2] (Omer Dep., Ex. F to Pl.'s Resp. Br., Docket No. 118, 16:11-17:21) In response, the Hospital does not dispute that Omer is a final policymaker on many subjects, but argues that his authority is limited in the specific area relevant to this case — discipline or termination of employees when legal compliance issues are involved.

Having reviewed the parties' evidence, I conclude that the Hospital is not entitled to summary judgment. Omer's testimony does not even hint at the limitation to his

---

[2] The Tenth Circuit has identified three elements to aid courts in identifying final policymakers: "(1) whether the official is meaningfully constrained 'by policies not of that official's own making;" (2) whether the official's decision are final — i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority). *Randle v. City of Aurora*, 69 F.3d 461, 448 (10th Cir. 1995) (quoting *Praprotnik v. City of St. Louis*, 485 U.S. 112, 127 (1988)).

policy making authority that the Hospital asserts. And, while the Hospital's evidence provides at least some indication that such a limitation actually exists, it is not conclusive. A reasonable jury could still find, based on Omer's testimony, that the Hospital did not limit Omer's authority as they claim; and that his authority to fire Overton was not meaningfully subject to any policy that he did not himself make, and was not meaningfully subject to any review process. Therefore, summary judgment is not appropriate.

      d.     <u>Overton's Claim Against Omer in His Official Capacity</u>

Omer also argues that Overton's claims against him in his official capacity should be dismissed as duplicative of the claims against the Hospital and the Board of Trustees. Overton does not respond to this argument, and Omer is plainly correct. *See Monell v. Dep't of Soc.* Servs., 436 U.S. 658, 690 n.55 (1978) (noting that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent") Therefore, summary judgment will be granted as to the official capacity claims against Omer.

2.     <u>False Claims Act Retaliation</u>

In addition to her § 1983 claim, Overton brings a claim under the FCA's *qui tam* provisions for retaliation. These provisions are designed to provide an incentive for private individuals to expose those who defraud the government. *United States ex rel. Ramseyer v. Century HealthCare Corp.*, 90 F.3d 1514, 1517 (10th Cir. 1996). Accordingly, the FCA empowers such individuals to bring a civil suit on behalf of the United States and to share in a percentage of any recovery that results. 31 U.S.C. §

3730(d). Moreover, any employee who takes action "in furtherance" of such a lawsuit is protected against retaliation. § 3730(h). But, since only actions "in furtherance" FCA actions are protected, plaintiffs cannot succeed in a retaliation claim unless their actions "could be reasonably described as an 'investigation' sufficient to put defendants on notice of a possible *qui tam* action." *Ramseyer*, 90 F.3d at 1522.

In line with their arguments regarding Overton's § 1983 claim, Defendants argue that her actions were not sufficient to put them on notice because her "investigation" consisted of nothing more than what was required by her job. *See id.* at 1517 (holding that a Medicaid compliance consultant's monitoring and reporting activities did not provide her employer with sufficient notice because her official duties included these exact activities). However, as discussed above, this case involves genuine issues of fact regarding Overton's official job duties. Moreover, a reasonable jury could find that Overton's persistent and repeated questioning of multiple sources — first her supervisors, then an outside consultant, and finally a state inspector — was sufficient to put Defendants on reasonable notice of a *possible* FCA action. Therefore, Defendants are not entitled to summary judgment on this claim.

    a.    <u>Defendant Omer's Liability Under the FCA</u>

Finally, Omer argues that even if Overton's FCA claim survives summary judgment, he cannot be personally liable because the FCA only provides a remedy against "employers." 31 U.S.C. § 3730(h). In response, Overton argues that Omer is liable because he was her "de facto" employer. *See Mruz v. Caring, Inc.*, 991 F. Supp. 701 (D. N.J. 1998) (holding that a board of trustees member who "dominated and

9

dictated" the actions of the employer corporation, and who secretly used corporate funds to pay for her personal expenses could be liable under § 3730(h) as a "de facto" employer).

I agree with Omer. As the *Mruz* court noted, "[e]verything about the plain language of section 3730(h) reflects a legislative intent to operate exclusively in the area of the 'employment relationship.'" *Id.* at 709. Accordingly, I agree with the D.C. Circuit Court of Appeals that "[i]n the absence of explicit statutory language to the contrary, we therefore infer that Congress intended "employer" in § 3730(h) to have its ordinary, common law meaning." *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 322 F.3d 738, 740 (D.C. Cir. 2003); *accord United States ex rel. Golden v. Ark. Game & Fish Comm'n*, 333 F.3d 867, 870-71 (8th Cir. 2003).

Overton has provided no evidence that Omer is her employer in the common-law sense of the word. Therefore, summary judgment is appropriate on her FCA claim against Omer.

Accordingly, it is ordered:

1. The motion for summary judgment submitted by defendants Pioneers Hospital of Rio Blanco County and the Board of Trustees of the Hospital, filed February 1, 2006 (Docket No. 97), is denied.

2. Defendant Omer's motion for summary judgment, filed February 1, 2006 (Docket No. 96), is granted in part.

3. Plaintiff's first claim, pursuant to 42 U.S.C. § 1983, is dismissed to the extent it names defendant Omer in his official capacity.

4. Plaintiff's second claim, pursuant to the False Claims Act, is dismissed as to defendant Omer.

5. Plaintiff's motion for leave to submit a sur-reply brief, filed June 27, 2006 (Docket No. 171), is granted.

6. This case remains pending on Plaintiff's first claim against defendant Omer in his individual capacity, and upon both of Plaintiff's claims against defendants Pioneers Hospital of Rio Blanco County and the Board of Trustees of the Hospital.

DATED at Denver, Colorado, on September 28, 2006.

BY THE COURT:

s/ Walker D. Miller
United States District Judge